UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.  4:13CR503 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| ONDREA SHABAZZ, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court on a Motion to Suppress filed by Defendant, Ondrea Shabazz. Doc. 17.  Plaintiff, United States of America, timely responded to the motion.  On March 14, 2014, the Court held an evidentiary hearing on the matter.  Upon review of the relevant filings, the evidence produced at the hearing, and the applicable law, Shabazz' Motion to Suppress is DENIED.

I. <u>Facts</u>

FBI Special Agents Aaron Hayes and Anthony Sano were investigating Shabazz' real estate business.  During the course of this investigation, the Agents spoke with Shabazz on three separate occasions.

The first was on April 9, 2013.  Agents went to the restaurant owned by Shabazz and his wife and spoke with them outside in the parking lot.  Mr. And Mrs. Shabazz willingly answered the Agents' questions.

The second interview took place on June 19, 2013.  Agents first went back to the restaurant where they had interviewed Mr. and Mrs. Shabazz.  Agents spoke with Mrs. Shabazz and learned that Shabazz was not at the restaurant, but rather was at home.  Accordingly, the

Agents called Shabazz at home and Shabazz gave the Agents directions to his home.  The Agents then drove to Shabazz' home and spoke with him for about an hour outside the home.

Around mid-July, Agents contacted Shabazz and informed him that they needed to talk with him again.  The Agents set up a date and time for Shabazz to come to the Agent's Office.  As such, on July 17, 2013, Shabazz drove to the Agents' location for his interview.  This interview lasted approximately 3-4 hours.  At the conclusion of the interview, Shabazz left the office.

On November 13, 2013, Shabazz was indicted for mail fraud and aggravated identity theft.  On February 6, 2014, Shabazz filed a motion to suppress the evidence from the three interviews.  The government timely responded and the Court held an evidentiary hearing on March 14, 2014.

## II. Applicable Law and Analysis

Shabazz contends that all three interviews were custodial interrogations were taken in violation of his *Miranda* rights.  The Court disagrees.

The Fifth Amendment protects a criminal defendant from compelled self-incrimination. See U.S. Const. Amend. V.  To protect this right, the Supreme Court has required that a criminal defendant be apprised of certain rights prior to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966). The *Miranda* requirements, however, apply only "when there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (concluding questioning was not custodial when individual came voluntarily to the police station, where he was immediately informed that he was not under arrest, and left the police station after the interview without hindrance.) *Miranda* warnings are

not required "simply because the questioning takes place in a station house or because the questioned person is one whom the police suspect." *Mathiason*, 429 U.S. at 495.

> In drawing the line between a non-custodial encounter between a citizen and the police (where *Miranda* does not apply) and a custodial encounter (where it does), courts consider all of the circumstances surrounding the encounter, with the ultimate inquiry turning on whether a formal arrest occurred or whether there was a restraint on freedom of movement of the degree associated with a formal arrest.  To answer this question, courts focus on the objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.

*United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (quotations and citations omitted).

Several factors are relevant when determining whether an interrogation was of a custodial nature, including (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions. *Id.; United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003); *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998).

Shabazz conceded at the evidentiary hearing that Shabazz was not in custody for the first interview that took part on April 9, 2013 at Mrs. Shabazz' restaurant.  The Court agrees and concludes that this interview was not done in violation of Shabazz' *Miranda* rights.  The evidence reflects that conversation was approximately an hour and a half, occurred outside and that Shabazz willingly approached the officers and participated in the conversation.  As such, the Court overrules Shabazz' motion to suppress any statements made as a result of this conversation.

Shabazz further contends that the June 19, 2013 interview, which occurred outside his home was a custodial interrogation in violation of his *Miranda* rights.  The evidence adduced at

the hearing does not support this contention. Testimony revealed that the Agents first went to Mrs. Shabazz' restaurant and spoke with her. She informed them that Shabazz was likely at home. Agent Hayes stated that he spoke with Shabazz on the phone and Shabazz invited the Agents to his home. Agent Hayes testified that upon arrival at the home, Shabazz welcomed them, came outside to speak with them and they had a "conversation." He stated that the conversation was less than an hour. On cross-examination, Agent Hayes explained that the Agents did not inform Shabazz that they were investigating him for a crime, nor did they tell him that he did not have to answer their questions. He further explained that Shabazz never attempted to leave and voluntarily answered the questions.

Shabazz also testified at the hearing. He indicated that he spoke with the Agent on the phone and gave him directions to his house. He stated that he did not tell the Agent that he could not come to his home. He explained that the conversation took place outside, but he did not feel free to leave. On cross-examination, Shabazz stated that the interview ended after he told the Agents he had to leave to relieve his wife at her restaurant. The Court concludes that there was not a restraint on Shabazz' freedom to the level of an arrest and that a reasonable person in this situation would not have believed he was in custody. *Panak*, 552 F.3d at 465.

The third interview occurred on July 17, 2013 at the FBI resident agency in Youngstown, Ohio. Agent Hayes testified at the hearing that he contacted Shabazz via telephone to set up a date and time for Shabazz to come to the office to discuss the matter further. Shabazz agreed and on the date in question, drove himself to the office. Agent Hayes confirmed that Shabazz asked him whether he should bring a lawyer and Agent Hayes informed him that he could not provide him with legal advice. Agent Hayes explained the security measures in place at the office. He stated that upon entering the front lobby there is a metal detector. Once in the lobby,

there is a locked door between the lobby and the Agents' offices and conference room.  As such, a person must be permitted entrance to the office from the lobby.  Agents escorted Shabazz to a conference room, where they sat at a table.  Shabazz was sitting closest to the door, with his back to the door.  Agent Hayes testified that the door was unlocked and that Shabazz could have walked out at any point during the interview.

Agent Hayes testified that prior to starting the interview, he informed Shabazz that he was not in custody and reminded him that he was there by his own choice.  Agent Hayes testified that he explained to Shabazz that if he did not want to speak with the Agents he did not have to and that he could leave at any time.  Agent Hayes stated that the interview was three to four hours long and that the Agents offered Shabazz restroom breaks, which Shabazz declined.  At the conclusion of the interview, Agent Pikunas wrote a statement stating that the information Shabazz gave them was true and Shabazz signed it.  Agent Hayes stated that he thanked Shabazz and Shabazz stated that he wanted to get "this" over and move on with his life.  On cross-examination, Agent Hayes clarified that Shabazz made this statement prior to the start of the interview, not after.  Agent Hayes and Shabazz shook hands and he escorted Shabazz to the lobby.  Agent Hayes stated that Shabazz left on good terms and that the conversation had been professional and congenial.

Agent Pikunas also testified to the interview on July 17, 2013.  He verified that the door to the conference room in which the interview took place was not locked.  He stated the prior to the start of the interview Agents told Shabazz he was free to leave.  He explained that Agents offered Shabazz restroom breaks, but Shabazz declined them, choosing to continue.  He stated that that interview was amicable and friendly, with no tension.  He stated that he wrote up a statement for Shabazz to sign that indicated that his statements were true.  On cross-examination,

5

Agent Pikunas stated that he recalled the Agents made it very clear to Shabazz that he was there voluntarily and was answering the Agents' questions voluntarily.  He stated that he recalled that Shabazz stated that he wanted to do the interview to get on with his life.

Shabazz testified that the Agents did not tell him he was a suspect and likely to be charged in this case.  Had he known this, he would have contacted an attorney.  He testified that he believed the door in the conference room was locked because he had been buzzed in.  He stated that he did not think he could get back out that door and thought he was in a locked conference room.  He denied that the Agents told him he could leave the room and that he was free to not answer their questions.  He stated that the Agents did not tell him he a right to an attorney despite the fact that he asked about one.  Shabazz testified that the Agents threatened to indict his wife if he did not cooperate and therefore he felt compelled to answer the questions.  On cross-examination, he explained that after the interview he drove himself home.

The Court had the opportunity to observe all three witnesses testify during the hearing.  Given that direct observation coupled with the below analysis, the Court finds the Agents' testimony to be more credible.  *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007) (affording the district court's credibility determination regarding witness testimony great deference).

A review of the totality of the circumstances reveals that Shabazz' interview was not custodial in nature.  Although the interview took place at the Agents' office, this fact alone does not amount to a custodial interrogation.  *Yarborgough v. Alvarado*, 541 U.S. 652, 664-65 (2004) citing *Mathiason*, 429 U.S. at 495 (concluding individual was not in question when questioning took place at the police station, but police did not transport individual to the office, police did not threaten the individual or suggest individual was under arrest, the individual's parents remained

6

in the lobby during the interview, police asked individual if he needed a break, and the individual left the station at the completion of the interview); see, also, *California v. Beheler*, 463 U.S. 1121, 1125-26 (1983) (concluding that an individual was not "in custody" although the questioning took place in a police station). The interview began with the Agents telling him that he was not in custody and was free to leave or not answer their questions. Shabazz informed the Agents that he just wanted to get the interview completed so he could move on with his life. As noted by the Sixth Circuit, "a statement by a law enforcement officer to a suspect that he is not under arrest is an important part of the analysis of whether the suspect was 'in custody.'" *Swanson*, 341 F.3d at 530 (citation omitted). While Shabazz denies that the Agents informed him he could leave, both Agents testified to the contrary. As stated above, the Court concludes that the Agents' statements were more credible on this issue.

Shabazz testified that due to his background in the US Army and as a corrections officer for 15 years his training and experience dealing with authority figures was that whenever an authority figure, including law enforcement ask a question, he was required to answer it. Despite this subjective belief, the Court concludes that there was no threat of force and the interview was professional and congenial. This Court is required to "focus on the objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Panak*, 552 F.3d at 465. As such, Shabazz' subjective belief that he was required to answer the Agents, despite the Agents' testimony that he was informed that he was answering questions voluntarily, does not rise to the level of a custodial interrogation. Similarly, Shabazz' subjective belief that the door was locked and that he was not entitled to leave is not supported by the evidence in the record. Accordingly, Shabazz' motion to suppress any statements arising from this interview is denied.

### III. Conclusion

For the reasons set forth herein, Shabazz' Motion to Suppress is DENIED.

IT IS SO ORDERED.

DATED: April 8, 2014  */s/ John R. Adams*
Judge John R. Adams
UNITED STATES DISTRICT COURT